UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8·26·16

TERRENCE IRVINS, *as Administrator of the*
*Estate of Doreen Sutton*,

                  Plaintiff,

  -v-

METROPOLITAN MUSEUM OF ART, *et uno*,

              Defendants.

No. 15-cv-5180 (RJS)
OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge:

Plaintiff Terence Irvins brings this suit in his capacity as administrator of the estate of Doreen Sutton (the "Estate") against Defendants The Metropolitan Museum of Art (the "Museum") and its plan administrators (together, "Defendants"), alleging violations arising under the Employee Retirement Income Security Act of 1974 ("ERISA"). Plaintiff asserts that the plan administrators wrongfully distributed the benefits of Ms. Sutton's ERISA plans to her former spouse despite the former spouse's execution of waivers renouncing his rights to her assets and any benefits to which she was entitled. Now before the Court is Defendants' motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons stated below, the motion is granted.

## I. BACKGROUND[1]

Doreen Sutton, a former employee of the Museum, was a participant in several of its benefits plans, including the Museum 403(b) Retirement Plan for Non-Union Employees (the

---

[1] The following facts are taken from the first amended complaint and the exhibits attached thereto. (Doc. No. 12 ("Complaint" or "Compl.").) In ruling on Defendants' motion, the Court has also considered Defendants' memorandum of law (Doc. No. 24 ("Mem.")), Plaintiff's opposition (Doc. No. 28 ("Opp'n")), and Defendants' reply (Doc. No. 29 ("Reply")).

"Basic Plan"), the Museum 403(b) Matching Plan for Non-Union Employees (the "Matching Plan"), and the Museum 401(a) Special Retirement Plan for Select Non-Union Employees (the "ARC Plan," and together with the Basic Plan and the Matching Plan, the "Plans"). (Compl. ¶ 4.) Each of the Plans enabled Ms. Sutton to designate a beneficiary for the distribution of benefits upon her death, but, except for one portion of the Basic Plan, she did not do so. In the absence of a designated beneficiary, the Plans dictated that the decedent's spouse would automatically become the beneficiary. (*Id.* ¶ 26; *id.* Ex. K.) Ms. Sutton passed away on October 29, 2012. (*Id.* ¶ 19.)

On December 12, 2012, Plaintiff filed a notification of Ms. Sutton's death and provided affidavits of renunciation and disclaimer (the "Waivers") signed by Anthony Sutton, Ms. Suttons' estranged spouse. (*Id.* ¶ 20-21.) These Waivers, executed on November 26, 2012, irrevocably waived and divested all interests, rights, and entitlements that Mr. Sutton may have held in any assets or benefits payable under the Plans. (*Id.*) In May 2013, Plaintiff filed claims (the "Claims") with the Museum's custodian, Vanguard, for certain benefits under the Plans. (*Id.* at 22.)

Over the next several months, Plaintiff engaged in discussions with Gordon Barger, associate chief human resources officer for the Museum, and the Museum's custodians, Vanguard and Fidelity, about the Claims. (*Id.* ¶¶ 24-31.) Thereafter, on March 6, 2014, Barger wrote an e-mail to Plaintiff stating that the Claims had been denied, that "[b]eneficiary accounts ha[d] been created for each of the 4 named beneficiaries," and that "the transfer of assets to Mr. Sutton's account ha[d] been completed." (*Id.* Ex. G.) This process was concluded on March 7, 2014. (*Id.*)

On March 24, 2014, Plaintiff wrote an e-mail to the Museum challenging the transfer of the Plans' benefits to Mr. Sutton. (*Id.* ¶ 46.) In a March 27, 2014 e-mail response, the Museum, citing the Supreme Court's decision in *Kennedy v. Plan Administrator for DuPont Savings and*

2

*Investment Plan*, 555 U.S. 285 (2009), indicated that "[n]one of the [Museum] Plans recognize waivers or disclaimers of benefits." (*Id.* Ex. H.)  On July 11, 2014, Plaintiff sent another letter to the Museum questioning its decision to follow the Plans' documents rather than the Waivers. (*Id.* Ex. I.)  On July 25, 2014, the Museum wrote a letter to Plaintiff stating that the "July 11th letter is being treated as a claim for benefits under each of the Plans." (*Id*. Ex. J.)  On October 10, 2014, the Museum denied the Claims on the ground that the Museum "will not recognize the Disclaimer of Property Interest." (*Id.* Ex. K.)  More than two months later, on December 12, 2014, Plaintiff filed an appeal of the October 10, 2014 denial of the Claims, stating that the Museum failed to provide timely notification of the denial of the Claims and that the Waivers should be treated as having the effect of Mr. Sutton predeceasing Ms. Sutton. (*Id.* ¶ 52.)  On February 9, 2015, the plan's administrative committee denied the Estate's appeal and once again denied the Claims. (*Id.* ¶ 53.)

On June 11, 2015, Plaintiff filed a petition in the Supreme Court of the State of New York, Bronx County, pursuant to Article 78 of the New York Civil Practice Law and Rules, asserting that Defendants committed a number of procedural violations of ERISA, including an untimely denial of Plaintiff's claims, and ultimately wrongfully distributed the benefits to Mr. Sutton without crediting his waivers. (Doc. No. 1, Ex. B.)  Defendants removed the action to this Court on July 2, 2015 (Doc. No. 1), and on August 7, 2015, Plaintiff filed the amended complaint (Doc. No. 12).  On September 14, 2015, Defendants filed this motion to dismiss the amended complaint (Doc. No. 23), which was fully briefed as of October 20, 2015 (Doc. No. 29).

## II. LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must "provide the grounds upon which [the] claim rests." *ATSI Commc'ns,*

*Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A

pleading that states a claim for relief must contain . . . a short and plain statement of the claim

showing that the pleader is entitled to relief . . . ."). To meet this standard, plaintiffs must allege

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a Rule 12(b)(6) motion to

dismiss, a court must accept as true all factual allegations in the complaint and draw all reasonable

inferences in favor of the plaintiff. *ATSI Commc'ns*, 493 F.3d at 98. However, that tenet "is

inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, a pleading that offers only "labels

and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."

*Twombly*, 550 U.S. at 555. If the plaintiff "ha[s] not nudged [its] claims across the line from

conceivable to plausible, [its] complaint must be dismissed." *Id*. at 570.

## III. DISCUSSION

### A. Wrongful Denial of Benefits

Section 502(a)(1)(B) of ERISA provides that a plan beneficiary or participant may bring

an action "to recover benefits due to him under the terms of his plan, to enforce his rights under

the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29

U.S.C. § 1132(a)(1)(B). The Second Circuit has stated that such a claim is essentially a contract

claim asserting rights under a benefit plan. *Wilkins v. Mason Tenders Dist. Council Pension Fund*,

445 F.3d 572, 583 (2d Cir. 2006). As such, to enforce these rights, "the participant must first

qualify for the benefits provided in that plan." *Id.*

Here, Plaintiff's claim for wrongful denial of benefits rests entirely on his allegation that the plan administrator erred in distributing the benefits to Mr. Sutton – in compliance with plan documents – because Mr. Sutton had executed a separate renunciation of benefits, which the plan administrator refused to consider.  In response, Defendants contend that Plaintiff's claim fails because the distribution of benefits complied with the plan documents rule articulated by the Supreme Court in *Kennedy*.  The Court agrees with Defendants.

In *Kennedy*, the Supreme Court endorsed "a straightforward rule of hewing to the directives of the plan documents" such that a plan administrator is not required to consider extrinsic documents.  555 U.S. at 300.  Specifically, the Supreme Court held that a plan administrator did not have to consider a divorce decree when plan documents still named the decedent's ex-wife as his beneficiary.  The Court reasoned that "by giving a plan participant a clear set of instructions for making his own instructions clear, ERISA forecloses any justification for enquiries into nice expressions of intent, in favor of the virtues of adhering to an uncomplicated rule."  *Id.* at 301.  In sum, *Kennedy* reaffirmed the principle that a plan administrator must act in accordance with plan documents and need not consider extrinsic evidence.

Here, Plaintiff does not dispute that the distribution to Mr. Sutton complies with the plan documents.  (*See* Compl. ¶¶ 99-105.)  Nevertheless, to distinguish the present case from *Kennedy*, Plaintiff focuses on the fact that the plan documents in *Kennedy* provided a way for a beneficiary to disclaim benefits, whereas in this case the plan documents offered no means by which to disclaim benefits.  (Opp'n at 18.)  For this argument, Plaintiff relies on footnote 13 in *Kennedy*, in which the Supreme Court stated that *Kennedy* did "not address a situation in which the plan documents provide no means for a beneficiary to renounce an interest in benefit."  555 U.S. at 304 n.13.  However, other courts have addressed this precise situation and have reached the conclusion

5

that the plan documents rule still governs.  For example, the Fourth Circuit has found that "it makes little sense to read [footnote 13] as hinging the applicability of the plan documents rule on whether the plan features formal procedures for waiver."  *Boyd v. Metro. Life Ins. Co.*, 636 F.3d 138, 143 (4th Cir. 2011).  In *Boyd*, the Fourth Circuit sided with the Secretary of Labor, who participated as an *amicus*, to conclude that a plan administrator was not required to consider a separation agreement in distributing benefits even though the plan documents in that case did not provide a means by which to disclaim benefits.  To hold otherwise, the court stated, would "unwind *Kennedy* and make a puzzle of plan administration."  *Id.* at 145.  The Eighth Circuit has also reached a similar conclusion.  *See Matschiner v. Hartford Life & Accident Ins. Co*., 622 F.3d 885, 888 (8th Cir. 2010) (noting that, while the plan at issue did not set forth any formal procedures for waiver, the "plan documents and not the divorce decree are controlling").  In fact, Plaintiff is unable to identify a single decision in support of his argument that footnote 13 of *Kennedy* stands for the proposition that the plan documents rule does *not* apply if the plan documents lack a method by which a beneficiary may disclaim benefits.

The Court thus agrees with the Fourth Circuit's reasoning in *Boyd* and concludes that the plan documents rule applies here regardless of whether plan documents provide a means to disclaim benefits.  Plaintiff's reading of footnote 13 conflicts with *Kennedy*'s unwavering emphasis on the plan documents rule and would create unnecessary complications for plan administrators.  Given *Kennedy*'s emphasis on "the virtues of adhering to an uncomplicated rule," 555 U.S. at 301, the Court concludes that the same reasoning must apply even where the plan documents do not provide a means to disclaim benefits.

Plaintiff's insistence on the injustice of this result overshoots the mark, since there are clearly other remedies available to plan participants and their estates to arrange for the proper

distribution of benefits even in the absence of a disclaimer provision in the plan documents. Most obviously, here, Ms. Sutton could have simply designated a beneficiary so that her spouse would not automatically be designated. Moreover, even at this stage, after Ms. Sutton's death, other legal remedies may still exist for the Estate to recover benefits paid to Mr. Sutton. For example, Mr. Sutton may refuse the benefits or transfer them to the Estate. In addition, courts have found that an estate may file suit against a beneficiary who has waived his or her right to benefits. *See, e.g.*, *Estate of Kensinger v. URL Pharma, Inc.*, 674 F.3d 131, 136 (3d Cir. 2012) ("Allowing a post-distribution suit to be brought directly against a named beneficiary would also make sense as a practical matter. First, it would permit the two interested parties to litigate against each other directly, without the plan administrator being caught in the middle."); *see also Andochick v. Byrd*, 709 F.3d 296, 300 (4th Cir. 2013) ("[P]ermitting post-distribution suits accords with the ERISA objectives discussed in *Kennedy*."). Accordingly, the Court is satisfied that adherence to the plan documents rule does not mean that Mr. Sutton may "be forced to accept disclaimed benefits." (Opp'n at 17.) A suit under ERISA against a plan administrator – in which Mr. Sutton is not even a party – is simply not the proper vehicle to attempt to collect benefits after the plan administrator acted in accordance with plan documents in distributing the benefits.

Finally, although Plaintiff attempts to rely on *CIGNA Life Insurance Co. of New York v. Gambuti*, that case is inapposite. No. 09-cv-10147 (KMK), 2011 WL 3424106 (S.D.N.Y. Jan. 3, 2011), *adopted*, No. 09-cv-10147 (RO), 2011 WL 3370351 (S.D.N.Y. Aug. 2, 2011). In *CIGNA Life*, which was an interpleader action, the court "stepped into the [plan administrator's] shoes" to resolve a dispute between the designated beneficiary and the participant's estate. *Id.* at *3. After considering "equitable factors," the court ultimately credited the beneficiary's waiver and used its discretion to recommend that the funds be paid to the estate. In so concluding, however, the court

recognized that "[a]lthough under New York law the Renunciation is irrevocable, the fact that the insurance policies are regulated by ERISA means that the distribution of the proceeds is governed by the terms of the plan. The Renunciation, by itself, is preempted and has no legal effect on the policy distribution." *Id.* (citation omitted). Thus, while the court in *CIGNA Life* ultimately exercised its discretion to consider a waiver outside of the plan documents, the case certainly does not stand for the proposition that a plan administrator must always do so, much less that a distribution in compliance with the terms of plan documents can support a claim for wrongful denial of benefits under ERISA. Here, given the different procedural posture of this case – where the Court must merely evaluate whether the plan administrator's decision complied with ERISA – the Court has no such discretion to redistribute the plan benefits in accordance with Plaintiff's wishes.

Based on the plan documents rule reaffirmed in *Kennedy*, the Court concludes that the plan administrator correctly distributed the benefits in accordance with the plan documents. Accordingly, Plaintiff's claim for wrongful denial of benefits fails, and the Court grants Defendants' motion to dismiss Count IV of the Complaint.

## B. Breach of Fiduciary Duty

ERISA requires that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104. While Section 502(a)(3) allows a participant or beneficiary to bring a civil action for breach of fiduciary duty, the type of relief that a claimant may seek is limited because "the relevant fiduciary relationship" is with a plan, not any individual beneficiary. *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 254 (2008); *see also Schnur v. CTC Commc'ns Corp. Grp. Disability Plan*, 621 F. Supp. 2d 96, 111-12 (S.D.N.Y. 2008)

8

("Plaintiff may be entitled to bring suit to enforce fiduciary duties owed *to the Plan* and its beneficiaries as a group, but any appropriate monetary relief is owed to the Plan, not Plaintiff as an individual."). Specifically, Section 502(a)(3) enables a participant, beneficiary, or fiduciary "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief." 29 U.S.C. § 1132(a)(3). Section 502(a)(3) thus clearly states – and courts have repeatedly affirmed – that it entitles claimants only to equitable relief. *See* 29 U.S.C. § 1132(a)(3); *see also Wilkins*, 445 F.3d at 578 (stating that "fiduciary duty violations entitle claimants only to equitable relief under ERISA § 502(a)(3)"). As such, an individual participant or beneficiary typically cannot bring an action for monetary damages, but rather "is limited either to injunctive relief against 'any act or practice which violates any provision of this subchapter or the terms of the plan' or 'other appropriate equitable relief' to redress such violations or to enforce any provision of ERISA or of the plan." *Hall v. Kodak Ret. Income Plan*, 363 F. App'x 103, 107 (2d Cir. 2010) (quoting 29 U.S.C. § 1132(a)(3)). In addition, the Supreme Court has noted that "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief." *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996).

Here, Plaintiff alleges that the plan administrators breached their fiduciary duties by failing to monitor third-party service providers, to apply the required prudence standard, and to act loyally. However, as a remedy for each of these alleged breaches of fiduciary duty, Plaintiff asks the Court to "revers[e] the Committee's decision which denied the Estate's Claims for the Plan Benefits," "direct[] the Museum to distribute the Plan Benefits to the Estate," and "grant such other and further relief as requested below." (Compl. ¶¶ 80, 105, 128.) Clearly, Plaintiff is not seeking the type of equitable relief which may be brought under Section 502(a)(3). Instead, Plaintiff is simply

seeking the payment of benefits, as each of the alleged breaches of fiduciary duty relates back to Plaintiff's claim for wrongful denial of benefits and seeks the payment of those benefits. Courts have routinely found that such relief simply cannot provide a basis for a cause of action under Section 502(a)(3). *See Wilkins*, 445 F.3d at 582 (holding that a claim to recover plan benefits may be cognizable under Section 502(a)(1)(B) but not Section 502(a)(3)); *see also Levin v. Credit Suisse, Inc.*, No. 11-cv- 5252 (RJS), 2013 WL 1296312, at *6 (S.D.N.Y. Mar. 19, 2013) ("Plaintiff's claims for benefits, costs, and fees duplicate the relief demanded in his wrongful denial of benefits claim. . . . Because ERISA specifically provides the very remedies Plaintiff seeks in connection with his fiduciary duty claims, equitable relief is unavailable for those claims and those claims must be dismissed."); *Schnur*, 621 F. Supp. 2d at 111-12 (holding that "claims for damages payable directly to the plan beneficiary must be sought under 29 U.S.C. § 1132(a)(1)(B), and not on a breach of fiduciary duty theory"). Although Plaintiff's Complaint also includes a general prayer for relief at its conclusion seeking "any injunctive relief as may be appropriate" (Compl. ¶ 129), the Court finds that this general, catch-all request is insufficient in light of the fact that the individual counts do not seek injunctive relief and merely restate Plaintiff's claim for benefits.

In short, Plaintiff cannot circumvent the plan documents rule by repackaging his claim for wrongful denial of benefits under Section 502(a)(1) as claims for breaches of fiduciary duties under Section 502(a)(3). As courts have repeatedly held, Section 502(a)(3) simply does not permit such a claim in which an individual plaintiff seeks monetary damages from a plan administrator payable to the claimant. *Wilkins*, 445 F.3d at 582; *Levin*, 2013 WL 1296312, at *6; *Schnur*, 621 F. Supp. 2d at 111-12. Accordingly, the Court concludes that Plaintiff's claims relating to alleged breaches of fiduciary dutie must also fail and dismisses Counts II, III, and V of the Complaint.

C.  Timely Notice

Plaintiff also brings a separate claim under 29 C.F.R. §§ 2560.503-1(a) and (1)(e), asking that the denial of benefits to Plaintiff be set aside as a result of Defendants' alleged procedural violations, including the failure to provide timely notice of the denial.  (Compl. ¶¶ 58-68.) However, the Second Circuit clearly has held that such a violation does not itself entitle a claimant to any separate civil penalties. *Halo v. Yale Health Plan, Dir. of Benefits & Records Yale Univ.*, 819 F.3d 42, 60 (2d Cir. 2016).  Rather, in *Halo*, the Second Circuit noted that although "[t]he Department's regulation is exacting, . . . the penalty for deviation is relatively modest – the plan will have to pay only those claims that are in fact covered." *Id.*  Accordingly, given the Court's finding above that Plaintiff has failed to state a claim that the plan administrators wrongfully denied him benefits, Plaintiff is not entitled to recover benefits that the Estate is not owed simply because of an alleged procedural violation.  The Court thus dismisses Count I of the Complaint.

D.  Leave to Amend

Although "Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend 'shall be freely given when justice so requires,' it is within the sound discretion of the [Court] to grant or deny leave to amend." *McCarty v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (quoting Fed. R. Civ. P. 15(a)).  In addition, the Second Circuit has consistently stated that district courts may deny leave to amend when plaintiffs request such leave in a cursory sentence on the last page of an opposition to a motion to dismiss, without any justification or an accompanying suggested amended pleading. *See, e.g.*, *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 188 (2d Cir. 2014) (affirming denial of leave to amend where plaintiffs already had one opportunity to amend their complaint and they "identified no additional facts or legal theories" to support their request to amend); *Food Holdings Ltd. v. Bank of Am.*

11

*Corp.*, 423 F. App'x 73, 76 (2d Cir. 2011) (affirming district court's denial of leave to amend where plaintiff requested leave to amend "on the final page of their brief in opposition to defendants' motion to dismiss, in boilerplate language and without any explanation as to why leave to amend was warranted"); *see also Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 275-76 (2d Cir. 2006).

Here, on the final page of his opposition to Defendants' motion to dismiss, Plaintiff, citing irrelevant Eleventh Circuit case law concerning Federal Rule of Civil Procedure 9(b), "requests leave to re-plead." (Opp'n at 25.)   Significantly, Plaintiff offers no basis for his request for leave to amend nor does he attach a proposed amended complaint. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (noting that a court may deny leave to amend, on notice grounds, "where the request gives no clue as to how the complaint's defects would be cured" (internal quotation marks omitted)).   Given the Court's finding that ERISA does not provide a cause of action by which Plaintiff can seek to claim benefits from plan administrators that were distributed in accordance with plan documents, the Court concludes that any amendment would be futile because Plaintiff cannot bring a valid claim under ERISA based on the alleged conduct of the plan administrators in this case.   *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) ("An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6).").   Accordingly, because Plaintiff has failed to provide any basis or explanation as to why an opportunity to amend would cure the Complaint's deficiencies, the Court denies Plaintiff's request for leave to amend.

## IV. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT Defendants' motion to dismiss the first amended complaint with prejudice is GRANTED in its entirety.   The Clerk of the

Court is respectfully directed to terminate the motion located at docket number 23 and to close this case.

SO ORDERED.

Dated:      August 26, 2016
            New York, New York

                                              RICHARD J. SULLIVAN
                                              UNITED STATES DISTRICT JUDGE